Mr. McManus. Good morning. We please the Court, every day in this country, appeals officers from the IRS Office of Appeals and taxpayers enter into settlement agreements using the form, which is specifically identified as an agreement with regard to deficiencies and with regard to over-assessments. But it doesn't say anything about interest? It does not say anything. Is the issue here? That's exactly correct, Your Honor. The form does not say anything about interest. Am I correct that what you're seeking in this case is interest on the amounts that were refunded for those five years, is that right? Well, that is correct, yes, although in the alternative we are seeking a remit back to the Federal Circuit for determination under contract principles whether or not the party's agreement should be interviewed. Another question. These payments that you receive were the result of a settlement, is that right? That's correct. Do you contend that the settlement itself requires those payments or are you challenging the validity of the settlement? We're contending that the settlement itself requires those payments. Now, where do you find that in the settlement? We believe that the form of the settlement itself, the form that the settlement was memorialized on is ambiguous with regard to the years and the amounts of the agreed upon over-assessments or over-payments or refunds, depending upon whose perspective you're talking about. And the Court similarly agreed in its summary judgment opinion that the form 870-AD itself was ambiguous with regards to the years and the amounts of the over-payments. It noted that the IRS Office of Appeals had put an asterisk on the date 1997 and put underneath it a reference that said this was the claim. When the taxpayer in this case asked the appeals officer at the time that he was executing the agreement, what does this mean? What's this asterisk? And by the way, this quotation is, this reference is cited in appendix 90. What does this reference mean? The appeals officer told the taxpayer, this is the claim date. In other words, the date that the claim was put in. However, that's not going to preclude you from receiving refunds for the various years that we've been talking about, plus interest for various years that we've been talking about. And so at the very beginning of this case, the Court looked at that form 870-AD and it said, we cannot decipher what years and what amounts this form relates to because of the asterisk. The Court felt that that was at the very least ambiguous and possibly that the term was completely omitted from the party's agreement. Of course, it's well known that the essence of a settlement is that neither side gets everything they'd like to get. And here, what happened is you got the money back that you had paid in taxes for a number of years, and then the IRS Office said, well, I think I'm going to give them a little more. So she gave you interest on half of those years but not on the other half. That's basically what she did, isn't it? That is what she did. Although the way the interest was actually computed, if you look at the way the IRS allocated the principal amount of the overassessments, it did so after the fact, after the parties had reached an agreement to what Mr. Shortman believed was a refund of all of the tax years plus all of the interest. It front-loaded or back-loaded the principal amounts. As I understand it, this dispute really stems from the fact that the IRS used, as an example to settle the case, a form that really didn't apply. The form as I read it is normally used when a taxpayer is going to pay something additional, and here they used it to try to formalize what the understandings were, not that the taxpayer would pay something additional, but that the government would refund something to the taxpayer. Well, the form can be used for both purposes. It can be used to memorialize what the Code refers to as an overassessment. The only way you know when you look at this form that this reflects an agreement to pay the taxpayer something is that the $36,000 has parentheses around it. That's correct, and that is the form that this taxpayer was provided with. This taxpayer inquired specifically, what does this form mean? What am I signing? And that, by the way, is an important contractual point, because if the taxpayer, as he's signing the form, believed one thing, and he was led to believe that that's what that form would effectuate based upon his conversation with the appeals officer, then from a contractual perspective, the meaning that was in the taxpayer's mind should be the meaning that prevails, notwithstanding the fact that the form could be interpreted a different way. When this taxpayer signed this form, he believed that it was effectuating a settlement agreement whereby he was going to receive refunds for 1980 through 1996. He also believed that he was going to receive interest on those refunds. Now, did he so testify? He did. That he understood from the negotiations that he would get interest for all the years? Yes, yes, he did, and that testimony is quoted in the opinion. And similarly, the IRS appeals officer testified that she believed that that form and that they had an agreement whereby he was going to receive interest for at least some years. Now, the form said with interest as provided by law. What law? Well, the form references interest provided by law with respect to deficiencies. There is no mention in the form whatsoever about interest as provided for by law with respect to over-assessments. And we contend that the reason why that is is not because the form is omitting a material term, but rather the form itself was never intended by the service to memorialize the amount of a refund. It was intended to memorialize the amount of an over-assessment, meaning the amount that the taxpayer was previously assessed is being adjusted or reduced to reflect an agreement by the service that the prior amount of the bill, essentially, the liability, was too high. Interest does not flow from the amount of the over-assessment or the bill, but rather it flows from the amount of the tax that the taxpayer has paid. So if the form were to say, and the taxpayer gets interest on the over-assessment, then that would throw out the entire system under 6611, whereby taxpayers are actually paid interest on the amounts that they have actually overpaid. It's completely possible that this taxpayer, even though they had agreed that they were over-assessments, would not be entitled to any refund at all. Now, this whole settlement was predicated on an erroneous legal assumption, wasn't it? Well, it was predicated, to some extent, on the... An assumption that all they could refund for the year in which the claim was made was the amount that the taxpayer owed. And I gather the government says that's not the law, and you don't quarrel with that, do you? We don't. We believe that the appeals officer, whether she was mistaken on the application of the law or she decided to settle the case based upon her perception of the application of other potential legal doctrines or judicial doctrines, she spoke about equity, she had in her mind various bases under which she was going to settle that case. But we contend that the legal basis for her settlement is irrelevant. She was clearly within her authority. The IRS was within their authority to agree to this type of a settlement if they were so inclined. So if they entered into a bad deal, we think that they have to live, ultimately, with that deal. And we think that that was ultimately what the Court of Federal Claims was troubled with. It substituted its own judgment for the judgment of the appeals officer and said, well, as I look at the deal, I don't think that this appeals officer should have entered into this deal. So as I think about interest, equity tells me that the taxpayer has gotten exactly what they should have received. But there's a danger, I suspect, in your argument, that if we were to reverse it and send it back to the trial court, the trial court might say, well, I think there's some calculations here. I'm going to send it back to the Internal Revenue Service, which I assume might be within the authority of the trial court. And if it got back to the service, the service might say, well, now that we've been informed about what's what, we think that we could have refunded the entire amount in that year in which the claim was made. And if we had done that, instead of the taxpayers receiving $6,000 in interest, they would only have received $4,000. And therefore, there's been an overpayment. So instead of giving you more money, we now decide you owe us $2,640 or whatever the amount would be. Well, this case is all about statutes of limitation. And thankfully, under that scenario, that statute of limitations is closed. But I don't think that's how the court would look at this issue. I think that the danger in this case right now is that the Court of Federal Claims has held that the IRS's standard form 870 AD omits a material term regarding the payment of interest. And it's up to the IRS, or potentially the courts, to decide what that reasonable term is. In this case, the court looked at custom and usage and substituted its own judgment for the appeals officer to decide what an appropriate amount of interest would have been for this taxpayer receipt. But that's all part of a settlement, isn't it? It is, but it wasn't up to the court. Then why, if it's part of a settlement, wouldn't it be appropriate for the settling party for the government to decide how much interest they want to be paid? Well, under— If the taxpayers didn't like it and thought they were entitled to collect the full amount of interest, no one forced them to enter into the settlement. If they thought they had a valid claim for the full amount of interest for all of the years, they were free to litigate that. They were, but when they signed that form, they clearly testified that they were under the impression that they, by executing that form, would receive interest for all of those years. Even though the form said nothing about that? Even though the form said nothing about that, because there were oral conversations contemporaneous with the execution of that form, under which the appeals officer, at the very least—and everybody agrees on at least one critical point, which is that the appeals officer told this taxpayer prior to executing the form that they were going to receive multiple refunds and that they were going to receive interest for multiple years. And so what's clear from— But they didn't say, and you're going to receive interest for each of those. Well, that's the taxpayer's position, and that's what the taxpayers testified to. The government appeals officer had a different recollection of what their conversation was at that time. But I think that the critical factor is that the form itself is ambiguous with respect to which years, not that it omits a material term regarding interest, because as we talked about a moment ago, it's not about—this form is not about the payment of interest or about refunds. It's about the amount of the tax liability that was improperly or erroneously put on the taxpayer's account in the first place. So your argument, then, from what you've just said, is that once the tax liability was settled, the federal regulation that says that interest shall be paid if there's a refund— That's clear. —is what applies and that it was not a matter of negotiation or discussion, that it automatically followed once there was a settlement that there would be a refund of these overpayments. That's exactly correct. Now, the parties could have agreed to some partial amount of interest and could have memorialized that agreement in a written agreement. There are provisions in the code that allow for closing agreements, but that's not what they did. If they could have agreed to pay less than the regulatory provision for interest, that quite weakens your case. Does it not? The government negotiator testified that she didn't remember the details of that conversation. The Court of Federal Claims felt that this entire arrangement and settlement was quite favorable to the taxpayer and we should leave well enough alone because he did mention equities and felt that these were equitable considerations, not legal or regulatory. So when you put that all together, it makes it much harder to penetrate. Does it not? I respectfully disagree because I think that if the government had intended to effectuate that type of a settlement, it knew how to effectuate that type of a settlement. But the form that it chose was a form with regard to overassessments from which interest should flow as a matter of law. And so by holding that the form is ambiguous with regard to the payment of interest, that opens up potentially every agreement that the IRS reaches with taxpayers regarding the dates and amounts of overassessments and how overpayments should be computed and ultimately how interest should be computed. Are you saying basically that by selecting this form, the service in effect said, you're going to be treated the same way the taxpayers would be required to treat us? Well, that's exactly correct. And I'm also suggesting that by selecting this form, the taxpayer should be treated the same way every other taxpayer that signs this form is treated, which is that the service— Is it the taxpayer who is getting money or who is paying money? Both. Both, Your Honor. It goes both ways. When there is a deficiency or an overassessment, ultimately there's a computation of an underpayment or an overpayment. Those computations are done by the service, both for taxpayers that have to pay money and taxpayers that should be receiving money. The form does not state the amount of money that the taxpayer owes necessarily either. It's an adjustment for the amount that should have otherwise been assessed, the bill, the liability. The form basically states how much—I take it in the case of a taxpayer who has agreed to pay more, the form just states how much that taxpayer has to pay. Well, it depends because it states the liability, but how much that taxpayer has to pay depends upon how much that taxpayer has previously paid. So the account could actually have a balance in it. The taxpayer could actually be due a refund even though the form provides for an additional assessment. Similarly, in this case, if Mr. Shortman had not paid any of his taxes at all, ever, even though the form decided that there was an overassessment with regard to certain amounts, he would not have received a refund and he would not have received interest on that refund because he would not have had a positive account balance. So the purpose of the form is really about the amount of the liability, not the amount that is due on the account. Interest is paid on the amount that's due on the account, not on the amount of the liability. And I think what appears to have happened is the court, both the court and the appeals officers, have blended those two concepts. So in finding that the form omits a material term, the court didn't need to find that. And that's going to cause, I think, problems with regard to other taxpayers because now, as the law currently stands, the IRS is free to make a determination whether or not to pay interest at all to any taxpayer. I need to interrupt you, Mr. McManus. We're well over your time. Thank you. Let's see what you've got. May it please the Court. First, I'd like to point out that the taxpayers filed a claim for refund for the taxpayer in 1997, citing 1341. Although the claim was originally denied, it was later settled. Had they brought suit and prevailed on their claim, they would have received less interest than, in fact, they were paid. Their argument is that the government... Is that because this was claimed on a 1997 return? Yes, and because the only statute that would have allowed them to get a refund for the taxes paid on those pension payments that were subsequently converted to disability payments was 1341. The mitigation provisions clearly didn't apply. There was no double inclusion in any of the prior years. So had they brought suit, they would not... First of all, they didn't file a claim for any of the earlier years, so they would be barred by that alone. But even if they had filed a claim, there was no basis to reopen those years under 1311. They could only use 1341, which is an adjustment in the year of repayment, which the IRS, bending over backwards, treated... That was the year that OPM got repaid by the Office of Workers' Compensation. They treated that as the year the taxpayer had to repay the money. So how do you get around the very clear regulation, 301-661, that if, except as otherwise provided, interest shall be allowed on any overpayment of any tax? There's no qualification. There's no sense that if we feel like it. There's nothing that says that if, in fact, equities have intruded into our doing the right thing for this taxpayer. It says if there's an overpayment, which is refunded, interest shall be allowed. Your Honor, in most cases, when there's a settlement and the taxable period is listed, each one for which there is determined to be an overassessment, if that was done here, if this Form 870-AD said, we have agreed that there's an overassessment for, say, the years 86 through 96, there would have been a line entry for each one and an amount. And then by operational law, 6611, they would have gotten interest from the due date of those... Perhaps that was an error not to calculate the interest when they stated, as they did on the form, how much the overpayment was for each year and refunded that overpayment. I beg to differ, Your Honor. There was no agreement at the time this document was signed that these years could be... I wasn't asking about the agreement. I was considering your position, saying that when there is a refund, there's also a line calculating the interest. If it's agreed that years are going to be refunded and the years are open or they can be reopened, yes. But this wasn't, as Judge Allegra determined after looking at all the documents, this was a confused situation. You have the document itself, the settlement agreement, form 870 A.D., only referencing the year 1997. There's an asterisk, okay, but there's no explanation. In other words, they weren't entitled to the refund by law. They were entitled by the settlement, and the settlement didn't specify... The settlement didn't specify any earlier years. And if you look at the internal documents from the IRS that Judge Allegra looked at, he determined that this was a settlement equitable in nature that didn't hew to any specific provision of the code because, as he pointed out and the taxpayers haven't challenged, 1311 clearly didn't apply on its face. And there was no analysis by anyone in the appeals office showing how it could possibly apply. The IRS doesn't give gifts to taxpayers. They agreed that this tax should not have been paid, and they agreed to refund it. That was obviously the right thing to do, whether you call it equitable or something else. And the IRS had the use of this money, which they weren't entitled to all these years. Why, in fact, as a matter of equity, as well as statute and regulation, shouldn't the value of that money be returned to the rightful owner of the money? First, in terms of use of the money, if you pay taxes in prior years that become closed, the government has use of the money. They have the taxes, in fact. And it's too bad. It's the same for the government if it's untimely and brings... But that's not the situation. Well, it was, actually. The trial court recognized. No, the trial court recognized that 1311 did not permit reopening years, that 1341 did, and that that would allow a refund for the full amount, which 1341 would allow. In 1997, for all the taxes paid in prior years, you compute your tax for that year by reducing your tax for that year by all the taxes that you paid in prior years. That's not the issue. The IRS did refund. They did, and interest is only payable under 1341 from the due date of the year of adjustment, which was 1997, and the return for that year is April 15, 1998, so you're entitled to interest on that $36,000 from that date. Is that the reason for the $4,000? If they computed it correctly, they would have gotten $4,000 from April 15, 1998 to 1999 when they paid the tax. They were entitled to $4,000 under the code. So the $6,000 was a gift? $2,000 of it was a gift. The IRS, however, when they came to process this, and it was written up as a 1340 settlement. I believe it's page 97 of the appendix. There's an appeal, a memorandum explaining why 1341 applied to allow taxpayer to recover in the year of repayment this money. However, when they went to process it, personnel in the IRS Office of Appeals thought that because taxpayers had only paid $5 in 1997, they could only refund $5. That was completely wrong, as the taxpayers agreed. There was a special provision, 1341B. It doesn't matter how much you pay. The extra taxes you shouldn't have paid are deemed to be a payment and are fully refundable. Nevertheless, they proceeded to reach what they considered an equitable way around this problem that really didn't exist, but they perceived it to exist. So they decided they would start with the year 1996 and start abating the taxes they had paid. Not the taxes just on the pension payments, but all the taxes worked backwards until they reached the agreed refund of $36,000. This was a made-up procedure. It wasn't based on the code. 1311, you would have started in 1980, and you would have abated just the taxes paid on the pension. You wouldn't have started from 1996 and abated all of the taxes and keep going until you got to 1936. So as Judge Allegra found, this was an equitable solution, and because they had decided they had bent the law, and what they thought they didn't have to bend the law, but they thought they were bending the law to give them the agreed refund of $36,000, the appeals officer testified that she explained to Mr. Shortman before he signed the agreement that she was going to allow interest for some of the years, but not all of the years. Didn't he testify to the contrary? He said that he wanted interest for all those years, but he admitted that he had no specific agreement as to how this interest would be computed, or that he said he didn't know whether she was of the same mind. So yes, from his viewpoint, this is what he wanted. I understood your opponent's argument. He said that the taxpayer stated in this case that he believed he would be getting interest on all of those years, and you say he didn't say that he believed, but that he hoped to get it. Well, he said he wanted it, and he thought he would, but the appeals officer testified to the contrary, that they hadn't discussed how interest was going to be computed, and that she had told him that he was not going to be getting interest for all these years, but only some of these years. Now, has that ever been resolved, that apparent conflict in the testimony? Yes, Judge Allegra said there was no meeting of the mind, not only as to the amount of the interest, but how it was going to be computed, the starting and ending dates. That was his determination, looking at the different testimony. They never agreed as to interest. But she said, according to the record, not that, no, you only get interest for a certain number of years, but that there were perhaps uncertainties. You're telling us that the issue was plainly joined at that settlement conference? That doesn't match what my recollection of what the record says she said. She said... This was many years ago, and it looked to me like an honest testimony, which said she didn't remember exactly what happened. She said she didn't remember exactly, but she did remember telling Mr. Shortman that he was only going to get interest for some of the years and not all of the years, and that he wasn't too happy about it. That was her testimony. And Judge Allegra reviewed this testimony and concluded the parties never had a meeting of mind as to interest. They agreed on the refund, but there was no agreement as to how it was going to be processed. And in the end, because of this mistake as to how 1341 operates, they came up, as Judge Allegra said, with an innovative equitable solution in which they would work backwards in refund amounts until they, not under any strict provision of the code, but just to reach this amount. And then she testified that because this was... Or there was a rooting slip from the IRS. Because they had done this equitably, they weren't going to pay interest for all the years they had worked backwards to, but only 6 of the 11 years. Judge Allegra determined that that was fair and reasonable because under the law, they weren't entitled to any more interest. They were only entitled to $4,000 and the government had paid them $6,500. And there had never been any agreement by the government that it was going to pay interest any more than it did pay because this was not a settlement that was based on for this year you have this amount, for this year you have this amount. It was not reflected in the 870 AD whatsoever. Do you know whether the IRS customarily uses this form 870 when it is paying the refunding to the taxpayer as distinguished from when the taxpayer is making additional payments? It does use it, Judge Friedman, but in the typical case, you don't have any question about how much... Assuming they use it for an over-assessment and they put in parentheses. In the typical case, there's no disagreement about what year the parties are talking about. But I want to find out, did they ever actually draw up a formal settlement agreement, say, which they spell out exactly? They do, but that has to be a closing agreement, which they try to avoid because it has to be signed by various high officials and it's very involved. It would only be in a major case. Yeah, so for these less complicated settlements, they just reach a figure. And normally, there's no disagreement about the year or years. If it's three years, 90, 91, and 92, each line would have 90, over-assessment of 10,000, 91, you know, whatever, 92. And you'd have the figures for each year. Insurance would follow automatically under the code from the due date of the return for each of those years. But here we have a case where the form only referenced 97, and then they decided they couldn't pay that at 97, and they reached this equitable solution where they're working backwards. And they never had any agreement as to what exactly the years would be paid for. They just worked backwards to come up with this amount. And as Judge Allegra determined, this is really a hybrid equitable settlement and that they received more interest than they should have received had they understood how 1341… It may be more principled than they were entitled to. Had they brought suit, had they never… There was no dispute that that was the amount of the insurance that they had paid the tax on. Was that right? They got all the taxes back, Joyce. Exactly, but that was not in dispute. No, but the question was how are you going to… For what years? And as I said originally, their claim was only for 97, which was based on 1341, which means interest only runs from 98. They got paid in 99s, which is 4,000 in interest. They want to go back to 86 or even 80. Even there wasn't even any payments for 80. The problem with 1997 was statute of limitations, right? 97 was open. That was open and 83 years was open. No, only 96 was open. But the problem was the appeals officer mistakenly believed because only $5 in tax had been paid for 97, they couldn't use 1341 to refund the full 36 from the prior years. That was wrong. The Code deals expressly with that and that they could have. It was just sort of a comedy of errors, which led them to come up with this equitable solution, as Judge Allegra said, and he determined that, A, they got more interest than they should have, and, B, it was fair because it was an equitable solution that wasn't based on any particular provision of the Code. So 6611 did not supply the answer here, unlike the typical case where it does, where the agreement specifies year amount, year amount, year amount, and then you just do it mechanically. I have nothing further. Any other questions? Thank you, Your Honor. Turbo tax doesn't help here. Not on this one. Thank you, Mr. Fowler. Mr. McNamara, would you say your rebuttal, please? Thank you. The most critical fact in this case, I believe, is that both the IRS and this taxpayer agreed that there would be multiple refunds for multiple tax years and that the taxpayer was going to receive multiple payments of interest and that this agreement was reached prior to the taxpayer executing the Form 870-AD. Regardless of what years and what amounts the taxpayer and the government agreed would be refunded and how that would be allocated among the various tax years, there's a clear meeting of the minds with regard to the most critical point, which is that the taxpayer and the government intended this refund to relate to multiple tax years. That's undocumented. That's undocumented, but both the taxpayer and the appeals officer agree that prior to Ms. McCarthy testified, that prior to executing this form, they had a conversation during which she agreed that he was at the very least going to be receiving interest for multiple years. But this was all in the context of settlement discussions? Yes, that's correct. And so what the court, we submit, should have done was to have applied contract principles to determine what years and what amounts did the parties agree would be refunded. And rather than doing that, the court jumped the gun and said, well, let me just look at the interest payment in a vacuum. What the court should have done was to go back and apply contract principles to determine what years and what amounts. And then, as the government has explained today, they should have then applied 6611 mechanically to those years and to those amounts. That would seem a proper approach if this were not a settlement. But with a settlement, you know, we do all sorts of things in a settlement. You say, well, you claim this, but I don't think you're entitled to all of that. I'll tell you what, I'll give you so much. That's what bothers me when you say the court should have applied contract principles, but that's not how settlements are always negotiated. It's a general thing. How much overall will you accept, and how much overall am I entitled to? It is a settlement, but a settlement is ultimately a contract. And so in order to interpret what the party's settlement was, the court should have, we would submit, applied contract principles. Let me change the case. Suppose instead of using this form 870, the servants had written to him, the taxpayers, a letter saying, we propose to settle your claim on the following basis. One, we will pay you a total of $36,000, whatever it is, the figure representing the amount of these overpayments, etc., etc. Two, we will pay you a total of $60,000 in interest on that amount. If this is an agreement, the total amount you will be paid therefore will be $42,000, whatever it is. If this is acceptable to you, please sign below. And down below is a place saying, I hereby accept your offer, and he signs it. Would there be any basis for your claim? No, because in that case I would submit that that contract would not be ambiguous with regard to the amount of the interest. I believe that this contract is ambiguous both with regard to the years and the amounts of the principle, and that ultimately leads to how the interest should be paid. But how the principle is set, it's $36,000 in this contract. But how the principle is allocated will drive the interest computation. The principle could be allocated to one year or 20 years. You mean it could be allocated only to determine interest? That's correct, because without knowing the years with respect to which those principle amounts relate, it's impossible to do a computation of interest. And in this case the taxpayer did not have any benefit of having an understanding when he entered into that agreement. But the principle amount did not clearly relate to 1997. It did not. So it was arbitrary to extend it all the way back. Well, the services method of computing how the interest would... It was in essence a gift. I respectfully disagree that it was a gift. The government had the use of this taxpayer's money. Whether or not the taxpayer was entitled to by law. was determined by the IRS. Those underlying tax principles were converted into a contract when the IRS and this taxpayer signed this 870 AD. So regardless of what the underlying merits were, and the government has talked a lot about how 1311 and 1341 should apply, ultimately I think it's contract principles that should apply. Those arguments were converted into an agreement. And I think that what needs to be done is to properly apply contract principles to interpret that agreement rather than importing what should have happened based on the law. Okay. Thank you. Thank you. Thank you, Mr. McManus and Mr. Farber. The case is taken into submission.